GILLINGHAM (OGDEN v.). See Case No. 10,456.

GILLIS (UNITED STATES v.). See Case No. 15,207.

---

## Case No. 5,440.

### GILLIS v. VAN NESS.

[1 Cranch, C. C. 369.] [3]

Circuit Court, District of Columbia. Dec. Term, 1806.

#### BILLS AND NOTES.

If the defendant receive the proceeds of the plaintiff's note, discounted with the defendant's indorsement, the plaintiff cannot recover the amount unless he has paid and produces the note, or accounts for its non-production.

Assumpsit for money lent and for money had and received, and insimul computasset. The evidence relied upon by the plaintiff [the executor of Stanly Byus] was a receipt in these words, viz.: "Received of Mr. S. Byus one hundred dollars which I am to repay him, and which, together with two hundred dollars received of, and receipted to him before, makes the amount of a note indorsed by me and discounted in Bank of Columbia yesterday. John P. Van Ness. Jan. 27th, 1804."

THE COURT (nem. con.) said, the plaintiff cannot recover upon that receipt unless he shows that he has taken up the note, and produces it, or accounts for its non-production.

---

GILLUM, The WILLIAM. See Case No. 17,693.

---

## Case No. 5,441.

### GILMAN v. BROWN et al.

[1 Mason, 191.] [1]

Circuit Court, D. Massachusetts. May Term, 1817.[2]

UNPAID PURCHASE MONEY — LIEN OF, ON LAND— SHARES IN ASSOCIATIONS FOR PURCHASE AND SALE OF LAND—EFFECT OF.

1. The scrip or certificate holders, in the New England Mississippi Land Company, hold their shares under the company itself, as a part of the common capital stock, and are not considered as holding derivatively, and solely as individual sub-purchasers, under the separate original titles of the original purchasers from the Georgia Mississippi Company, so as to be affected by any circumstances of defect in these separate original titles; those titles being in fact now vested in the trustees of the New England Mississippi Company itself, as part of its common stock, and not in the individual holders.

[See note at end of case.]

2. The award of commissioners under the acts of congress of the 31st of March, 1814, c. 98 [2

---

[3] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by William P. Mason, Esq.]

[2] [Affirmed in 4 Wheat. (17 U. S.) 255.]

---

Story, Laws, 1405; 3 Stat. 116, c. 39], and of the 23d of January, 1815, c. 706 [4 Bior. & D. Laws, 776; 3 stat. 192, c. 24], and of the 3d of March, 1815, c. 778 [4 Bior. & D. Laws, 843; 3 Stat. 235, c. 97], appointed to settle the claims of the New England Mississippi Land Company and others to the "Yazoo Lands" (so called), is not conclusive as between the scrip-holders and the said company, as to their rights, derived under the grants of certificates of shares in the stock of the company itself. The commissioners had no jurisdiction of any such question.

3. The origin and nature of liens on land for unpaid purchase-money. Generally speaking, such a lien exists, as between vendor and vendee, and also as against subsequent purchasers from the vendee with notice, that the money remains unpaid; but not as against a purchaser bona fide without notice. But the rule itself is not inflexible, as between vendor and vendee. And therefore if the parties do any unequivocal act, by which they clearly show that they do not contemplate such a lien to exist, the lien is not permitted to attach. If the vendor take a distinct security for the money, either of property, or of the responsibility of a third person, the lien is waived. But merely taking the note or bond of the vendee himself, without a surety, is no waiver of the lien. If the vendor take a negotiable note of the vendee, endorsed by a third person, payable at future times by instalments, this is such a distinct security as extinguishes the lien.

[Cited in Harris v. The Kensington. Case No. 6,122; Re Brooks. Id. 1,943; Re Perdue, Id. 10,975; Re Bryan, Id. 2,062.]

[Cited in Williams v. Roberts, 5 Ohio, 41. Disapproved in Graves v. Coutant, 31 N. J. Eq. 770. Cited in Re Palmer, 1 Dong. (Mich.) 428; Boos v. Ewing, 17 Ohio, 520; Tobey v. McAllister, 9 Wis. 469; Boynton v. Champlin, 42 Ill. 65; Adams v. Buchanan, 49 Mo. 64; Anderson v. Donnell, 66 Ind. 156; Messmore v. Stephens, 83 Ind. 527; Clower v. Rawlings, 9 Smedes & M. 122; Walton v. Hargroves, 42 Miss. 18; Baum v. Grigsby, 21 Cal. 178; Dunton v. Outhouse, 64 Mich. 425, 31 N. W. 413; Marshall v. Christmas, 3 Humph. 618; Kauffelt v. Bower, 7 Serg. & R. 78; Schnebly v. Ragan, 7 Gill. & J. 122; Chapman v. Chapman (Ark.) 18 S. W. 1037.]

[See note at end of case.]

4. Quaere, whether on a purchase of lands, lying in another state, made under a contract executed in Massachusetts by citizens of that state, a lien for the purchase-money vests in favor of the vendors, who are citizens of the state where the lands lie, the contract being silent on that head, and no such lien existing by law in any case of the purchase of lands in Massachusetts. A lien is always supposed to exist by the tacit consent of all the parties. Can such consent be presumed where the law of the state is not known to the purchasers in another state?

[Cited in Burrows v. Hannegan, Case No. 2,206.]

[See note at end of case.]

[Cited in Dow v. Rowell, 12 N. H. 59; Ahrend v. Odiorne, 118 Mass. 265; Snyder v. Martin, 17 W. Va. 301.]

5. A lien is neither a jus ad rem, nor a jus in re; and the lien of a vendor on the land sold is so mere a creature of the court of equity, that its existence cannot be safely predicated in any case, until established by the decree of the court. Quaere, whether commissioners under the acts of congress aforesaid, had any jurisdiction to inquire into or settle any claim for a mere lien.

[Cited in Dunlap v. Stetson, Case No. 4,164; Fletcher v. Morey, Id. 4,864.]